UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

UNITED STATES OF AMERICA    :

                                          :          S3 10 Cr. 798-05 (PAC)

      v.                                  :

MARIBEL LOPEZ,                  :

              Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S SENTENCING MEMORANDUM


                                                                     PREET BHARARA
                                                                     United States Attorney
                                                                     Southern District of New York
                                                                     One St. Andrew's Plaza
                                                                     New York, New York 10007


Aimee Hector/ David Miller
Assistant United States Attorneys
   – Of Counsel –



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

March 19, 2012

**BY ECF AND HAND DELIVERY**

The Honorable Paul A. Crotty
United States District Court Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    <u>United States</u> v. <u>Maribel Lopez</u>, S3 10 Cr. 798-05 (PAC)

Dear Judge Crotty:

       The Government respectfully submits this letter in connection with the March 22, 2012 sentencing of defendant Maribel Lopez (the "defendant" or "Maribel Lopez").  As set forth herein, the Government believes that a sentence within the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 18 to 24 months' imprisonment is reasonable and appropriate.  This range is identical to the Stipulated Guidelines Range set forth in the plea agreement and in the defendant's Pre-Sentence Report ("PSR").  Furthermore, as discussed below, a sentence within the Guidelines range is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

**FACTUAL BACKGROUND**

A.    <u>Relevant Facts</u>

       As the Court is aware, the defendant was arrested on December 13, 2010 on Indictment S1 10 Cr. 798 (PAC), which charged the defendant, her brother (Amaury Lopez, Jr.), her father (Amaury Lopez, Sr.), Fabio Morel, and William Pozo with conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 846.

This superseding indictment was subsequently superseded by a second superseding indictment, S2 10 Cr. 798 (PAC), which charged the defendant along with Lopez Jr., Lopez. Sr., and Morel with the same cocaine conspiracy charge as the first superseding indictment, but also charged the defendant's co-conspirators with substantive drug possession charges.

The defendant pled guilty, however, to Superseding Information S3 10 Cr. 798 (PAC), which contained a one-count structuring charge. While the defendant did not plead guilty to the narcotics offenses for which her co-defendants were convicted after trial and by guilty plea (for William Pozo), as described in the PSR's Addendum at 22, the defendant did not structure her financial transactions in a vacuum. The Government agrees with the Probation Office that "providing a description of the context in which the defendant acted is essential to understanding her actions." (PSR Add. p. 22). Furthermore, as the PSR correctly notes, "the defendant stipulated in a plea agreement that she knew or believed that the money she was depositing was the proceeds of an illegal activity" – large-scale drug trafficking – and thus, "describing that illegal activity falls within the scope of the presentence report." (*Id.*). Accordingly, the Government provides below a brief background to the Lopez Organization, the defendant's role within it, and the defendant's structuring conduct for which she pled guilty.

### *The Lopez Organization*

Since at least 2002 through September 2010, Amaury Lopez Jr. was the leader of a large-scale cocaine trafficking organization (the "Lopez Organization") that shipped hundreds of kilograms of cocaine from Puerto Rico to New York for sale. (PSR ¶ 13). The Lopez Organization employed numerous individuals who assisted the illegal drug-trafficking operation, including Maribel Lopez and co-defendants Amaury Lopez Sr. and Fabio Morel, among others. (*Id.*).

The Lopez Organization operated by purchasing cocaine in Puerto Rico, which was then prepared for shipment to the United States via mailing services. (PSR ¶ 14). The cocaine was secreted inside aluminum cans disguised as food products, among other methods of transport. (*Id.*). Once the cocaine arrived in the United States, it was distributed to mid-level traffickers in the New York area. (*Id.*). Sale of the Lopez Organization's cocaine resulted in profits of millions of dollars, which were collected by members of the Organization and then prepared for shipment back to Puerto Rico. (*Id.*). Often, the U.S. currency was hidden inside vacuum-sealed bags or cans and transported to Puerto Rico via human couriers or through the mail. (*Id.*).

Members of the Lopez Organization used weapons and violence to maintain control of the Organization's workers, drug trafficking territory, and proceeds. (PSR ¶ 15). Many members of the Organization carried firearms, including .40 caliber and 9 millimeter firearms and an Uzi, and possessed other paraphernalia, such as bullet proof vests. (*Id.*). Further, members of the Lopez Organization utilized those firearms when necessary to protect the Organization's profits. (*Id.*). In fact, in August 2004, Lopez Jr., Fabio Morel and co-conspirator Lennyn Mendez killed an individual named Javier Sanchez because the Organization believed that Sanchez had stolen Mendez's drug proceeds and threatened to steal proceeds belonging to Lopez Jr. (*Id.*).

Throughout the course of the conspiracy, law enforcement seized drugs, guns and money belonging to the Organization. For example:

- December 2002: $136,000 U.S.C. in a vacuum sealed bag seized from carry-on luggage at JFK Airport;

- May 2005: $365,000 U.S.C. in aluminum cans seized at a Post Office in Puerto Rico;

- July 2006: Approximately 7.8 kilograms of cocaine, 344 grams of heroin, and 115 grams of crack, and firearms and U.S.C. seized from stash house on Gunhill Road, Bronx, New York;

- February 2009: Approximately 6 kilograms of cocaine in aluminum cans seized from two suitcases at JFK Airport;

- March 2009: Approximately 1 kilogram of cocaine in an aluminum can seized at a Post Office in Yonkers, New York;

- April 2009: Approximately 4 kilograms of cocaine seized from the Van Cortlandt Hotel, Bronx, New York; and

- September 2010: Approximately 1.5 kilograms of cocaine seized in the Bronx, New York.

(PSR ¶ 16).

### *Maribel Lopez's Role in the Lopez Organization*

Evidence gathered during the investigation, some of which was presented at the trial of Amaury Lopez Jr, Amaury Lopez Sr., and Fabio Morel, which commenced on September 12, 2011, demonstrated that Maribel Lopez assisted the Lopez Organization primarily in terms of transporting and concealing narcotics proceeds. (PSR ¶ 24).

Bank account records for a Chase Bank account owned by Maribel Lopez for the period October 2006 through June 2009 revealed over 80 cash deposits in amounts under $10,000, totaling $155,120. (*Id.*). This conduct is the basis for the structuring offense for which Maribel Lopez pled guilty.

In or about May 2005, Maribel Lopez assisted in the transport of $365,000 in drug proceeds from New York to Puerto Rico, which was later seized at a Post Office in Puerto Rico. (PSR ¶ 26). Prior to that seizure, Lennyn Mendez brought approximately $150,000 in narcotics proceeds to the Lopez residence at 357 North Broadway in Yonkers, New York. (*Id.*). Amaury

Lopez Jr. and Fabio Morel were already at the apartment. (*Id.*). A short time later, Maribel Lopez arrived with an additional $180,000 in cash. (*Id.*). The money was counted using a money counter. (*Id.*). Thereafter, the money was shipped to Puerto Rico inside aluminum food cans for pick-up by Fabio Morel. (*Id.*).

In or about March 2009, law enforcement officers conducted surveillance at a Post Office in Yonkers after learning that an aluminum can containing approximately one kilogram of cocaine was shipped to the Post Office for pick up by a Lopez Organization co-conspirator, Jesus Soto. (PSR ¶ 27). In the course of the surveillance, law enforcement officers observed Lopez Sr. arrive with Jesus Soto, and then circle the Post Office in an effort to conduct counter-surveillance. (*Id.*). Shortly thereafter, Lopez Jr. and Maribel Lopez arrived in another vehicle and also conducted counter-surveillance of the Post Office. (*Id.*). After Lopez Sr. dropped Soto off at the Post Office, Soto was arrested as he claimed the package, and Lopez Sr., Lopez Jr. and Maribel Lopez sped off from the location. (*Id.*).

In or about August 2010, Maribel Lopez assisted in the transport of $20,000 in drug proceeds to Puerto Rico. (PSR ¶ 28). In August 2010, Amaury Lopez Jr. asked Mendez to transport money to Puerto Rico for him. (*Id.*). The money was dropped off to Mendez by Karina Taveras, who received it from Maribel Lopez. (*Id.*). Thereafter, under the direction of law enforcement, Mendez delivered the proceeds to a Lopez Organization co-conspirator in Puerto Rico. (*Id.*0.

In or about September 2010, Maribel Lopez confronted Mendez after Mendez received 1.5 kilograms of cocaine from Amaury Lopez Jr. (PSR ¶ 29). Prior to this conversation, Mendez and Lopez Jr. negotiated a 1.5 kilogram cocaine transaction. (*Id.*). At the time of the transaction, Mendez was working with law enforcement officers. (*Id.*). Accordingly, after Mendez received the 1.5 kilograms of cocaine from Lopez Jr., he was not able to pay Lopez Jr. for the product. (*Id.*). Lopez Jr. was angered by the lack of payment, and continued to harass Mendez for the money. (*Id.*). As a result of this transaction and other evidence obtained during the investigation, Lopez Jr. was arrested. (*Id.*). At some point thereafter, Maribel Lopez and Karina Taveras confronted Mendez about the transaction and his role in the arrest of Lopez Jr. (*Id.*). Maribel Lopez told Mendez that she believed Mendez was responsible for Lopez Jr.'s arrest and should have paid the money back to Lopez Jr. (*Id.*).

In September 2010, Lopez Jr. was arrested. (PSR ¶ 30). In his vehicle was a catalogue of a Freund Container Supply Company addressed to "Maribel Lopez" at the 357 North Broadway address. (*Id.*). Evidence at trial demonstrated that hundreds of aluminum cans were purchased by the Lopez Organization from the Freund Container Supply Company to secret both cocaine and money for shipment to and from Puerto Rico. (*Id.*).

B.     **Maribel Lopez's Guilty Plea**

On September 6, 2011, Maribel Lopez appeared before the Court and pled guilty to Count One (Structuring) of Superseding Information S3 10 Cr. 798 (PAC). (PSR ¶¶ 1-4). Count One charged that from in or about January 2007 through in or about May 2009, in the Southern District of New York and elsewhere, Maribel Lopez deposited at various banks currency in amounts designed in part to avoid generating currency transaction reports, in violation of 31 U.S.C. §§ 5324(a) and (d)(1).

## APPLICABLE LAW

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005). Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005). In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence. *Id.* at 113. In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

## DISCUSSION

As discussed below, the Government respectfully submits that after applying the sentencing factors to Maribel Lopez's conduct, a Guidelines sentence is clearly warranted.

### A.     **Application of the Sentencing Guidelines**

The applicable sentencing guideline to the offense charged in Count One is U.S.S.G. § 2S1.3. (PSR ¶ 34). Under Section 2S1.3, the defendant's offense level is calculated as follows: the base offense level is 6 (§ 2S1.3(a))(2)); because the structured amount is more than $120,000 but not more than $200,000, 10 levels are added ((§§ 2S1.3(a)(2) and 2B1.1(b)(1)(F)); because the defendant knew or believed that the funds were proceeds of unlawful activity – drug trafficking – the offense level is increased by two levels (§ 2S1.3(b)(1)); and because the defendant accepted responsibility for her criminal conduct in a timely manner, as reflected by her guilty plea, a three-level reduction is warranted (§ 3E1.1). (PSR ¶¶ 34-40). Maribel Lopez's total offense level is thus 15  (PSR ¶ 43). According to the PSR, Maribel Lopez has no criminal history points and is in Criminal History Category I (PSR ¶ 46), which results in a Guidelines range of 18 to 24 months' imprisonment. (PSR ¶ 82).

Although no longer binding upon the Court, the Guidelines sentence of 18 to 24 months' imprisonment appropriately reflects the seriousness of Maribel Lopez's offense. By any measure, the Guidelines range in this case is entirely reasonable and appropriate in light of the nature and scope of Maribel Lopez's criminal conduct.

B.  **The Section 3553(a) Factors**

A Guidelines sentence for Maribel Lopez is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a).  First, the nature and circumstances of the offense clearly warrant a Guidelines sentence.  Maribel Lopez's structuring activities were designed to support and conceal her family's large-scale drug trafficking activities.  Through her structuring actions, the defendant assisted the Lopez narcotics business by allowing the trafficking to go undetected for a substantial period of time.  As the PSR correctly notes, Maribel Lopez's "hands do no remain clean simply because she is convicted of handling drug proceeds as opposed to handling the drugs themselves." (PSR Add. p. 26).  Maribel Lopez was integrally involved in the Lopez Organization's conduct, as noted above and in the PSR, and her activities ensured its financial success for a significant period of time.  At bottom, Maribel Lopez was an important pillar in the Organization's structure and activities.  And as the Court is well aware from trial testimony, this was a significant drug organization that used violence to further its aims.  Consequently, the nature of Maribel Lopez's offense warrants a Guidelines sentence to reflect the seriousness of her conduct, promote respect for the law, and provide for just punishment.

Second, while Maribel Lopez argues that her conduct and familial situation warrant a sentence of non-incarceration, it is a hard truth that those who often suffer the most from a defendant's crimes are her own family – who have to live with the crime's consequences in much the same way as victims.  Unfortunately, Maribel Lopez's family's predicament in this regard is no different than many other families that are hit hard by a defendant's criminal activity and subsequent incarceration.  Furthermore, the PSR reflects that Maribel Lopez's continuing allegiance to her brother, Lopez Jr., indicates that she may present a danger of future criminal conduct:

> We are very troubled, however, regarding where the defendant's loyalties lie.  She remains committed to a man [Lopez Jr.] who supported her and their children, in part, by laundering large sums of narcotics proceeds. . . . With no evidence that the defendant has ever rejected financial support because it sprung from an illegal source, we are not convinced that the defendant will not commit further crimes in the future, particular when family loyalties come into play.

(PSR Add. p. 26).  Thus, there is a potential for future criminal activity from this defendant, further warranting a Guidelines sentence.

Third, under Section 3553(a), the need for a sentence to "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), must also be considered.  Here, the Government respectfully submits that a Guidelines sentence is necessary to serve this purpose.  As noted above, Maribel Lopez's structuring activities supported her brother's efforts in running a large-scale cocaine trafficking business for many years:  her endeavors were essential to the

Organization's financial operation.  A Guidelines sentence for Maribel Lopez will serve to deter others in the community from engaging in similar conduct in the future.

## CONCLUSION

      For the reasons set forth above, the Government respectfully submits that Maribel Lopez's crimes are appropriately penalized in the Guidelines.  Accordingly, the Government requests that the Court impose a sentence within the applicable Guidelines range of 18 to 24 months' imprisonment, as it is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

By:            /s/
                              Aimee Hector/David Miller
                              Assistant United States Attorneys
                              Tel.: (212) 637-1944/-2484

cc:     Mr. Michael Sporn, Esq. (by email)